ISABEL DUPONT ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF STRATFORD

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued February 6—decided March 6, 1968

*George A. Saden,* with whom was *Sturges N. Laros,* for the appellant (named plaintiff); with him also was *Daniel D. McDonald,* for the appellant (plaintiff Zuckerman).

*Robert N. Hunziker,* with whom, on the brief, was *Edward F. Stodolink,* for the appellee (defendant).

COTTER, J.   The plaintiffs have appealed from a judgment of the Court of Common Pleas dismissing

the plaintiffs' appeal from the action of the defendant the Stratford planning and zoning commission in approving amendments to the zoning regulations of the town of Stratford relative to the definition of a "shopping center" and its exemption from the distance limitation as applied to the use of the premises for the sale of alcoholic liquor.

On April 7, 1965, the commission held a public hearing on proposed amendments to twenty-five sections of the zoning regulations. The published notice stated inter alia that the public hearing was to be held "to hear arguments for and against proposed amendments for" twenty-five sections of the zoning regulations and that "[s]aid amendments concern the following." The notice then listed twenty-five categories and listed the one pertinent to the present case as follows: "15. Regulations Relating to the Location of Places for the Sale of Ale, Wine, Beer and Liquor." The notice ended with the statement: "Copies of the Zoning Regulations and these amendments are on file in the office of the Town Clerk and the Office of the Planning and Zoning Commission, Room 203, Town Hall." After the public hearing, the commission, at a meeting in executive session on May 5, 1965, voted, inter alia, to approve the amendment of § 15 as to two of its subsections.[1]

Copies of the amendments filed in the office of the

---

[1] "15.11    Shopping Centers containing five or more stores where the land, buildings and required parking are under one management or ownership may be permitted, upon petition of said owner or manager, and upon approval by the Commission, to have one *Class A* permit if such shopping center contains over 80,000 square feet of lot area and provided that any shopping center shall not have more than one package store permit." (Emphasis added.)

"15.3    EXEMPTIONS:    Buildings or lots used for the sale of alcoholic liquors, beer, ale or wine exclusively at wholesale, *shopping*

town clerk and the office of the planning and zoning commission did not contain the words italicized in the footnote which were included in the amendments as approved by the commission in executive session. It is the claim of the plaintiffs that the action of the commission was arbitrary, illegal and in abuse of its discretion because the legal notice and public hearing were invalid, the amendments adopted discriminate in favor of shopping centers as distinguished from other groups of stores and do not bear a rational relation to the public health, safety and general welfare, and the definition of "shopping center" is illegal, unreasonable and arbitrary and bears no relation to the public health, safety and general welfare.

The published notice of the public hearing stated that the hearing would be held in the council chamber at the town hall. It was called to order by the chairman of the commission in the council chamber, as published in the notice, but was recessed and reconvened at the Stratford high school auditorium across the street from the town hall. At the time the chairman called this meeting to order, he stated, inter alia: "[W]e have been ordered by the Assistant Fire Chief . . . of the Stratford Fire Department because of limitation on standing room in this Council Chamber to recess and reconvene to another location. The facilities of the Stratford High School auditorium across the street have been made avail-

centers as per Section 15.11, grocery stores selling canned or bottled beer or ale, and hotels with 25 or more rooms for sleeping purposes and accommodations for 150 or more diners at tables shall be exempt from the distance limitation provisions of this section. Any class of permit not exempt under provisions of this section may be approved at less than 1,500 feet from any exempt location subject to the provisions of Paragraph 15.1. *Class A permits under 15.11 are exempt from the 200 foot distance limitation as provided for in 15.1.*" (Emphasis added.)

able; therefore, this meeting will stand in recess and reconvene in thirty minutes at the Stratford High School Auditorium. Officer, will you please stay in attendance for that period of time in order to direct any additional interested persons to the high school." At the public hearing, three attorneys, two of whom appeared in the trial and appellate proceedings in this case, called the attention of the commission to the wording of the proposed amendment of § 15.11 of the zoning regulations, and one attorney stated that the intendment of the proposed amendment was "not entirely clear" and that it appeared to be "considerably ambiguous." They all stated that, if it was the intention to include shopping centers in § 15.3, the exemption clause, and thereby create an exemption for shopping centers from the 1500-foot rule and the 200-foot rule, they were opposed to the approval of the amendment. It was further stated at the public hearing, by one of the attorneys speaking in opposition, that it was understood that the "commission would, of course, intend to finalize these amendments." It is manifest that the plaintiffs, who vigorously opposed an exemption, as well as others in attendance, were clearly alerted and anticipated that an exemption was impliedly involved, and they had an opportunity to speak in opposition to it. Weaknesses and ambiguities in the proposed amendments "might be exposed at the hearing, and if this occurred the commission should be guided accordingly." *Couch* v. *Zoning Commission,* 141 Conn. 349, 358, 106 A.2d 173. Upon the record, the present case is distinguishable from such cases as *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 252, 83 A.2d 201, and *Lunt* v. *Zoning Board of Appeals,* 150 Conn. 532, 536, 191 A.2d 553.

Under the circumstances, the action of the chairman of the commission in recessing and reconvening the public hearing appeared to be perfectly proper. Such a course of action was not unreasonable if the requirements of the fire regulations, appropriate consideration for the safety of the public, and the expeditious accommodation of the large number of individuals who appeared in response to the public notice are kept in mind. There was no showing in the record that any individual who had planned to be present did not attend or was unable to express his opinion on the matters before the commission at the public hearing. The addition to the proposed amendment of the words in italics in §§ 15.3 and 15.11, included in the vote of the commission as adopted in executive session, did not invalidate the action of the commission as claimed by the plaintiffs. The notice as given was adequate and substantially in accord with the final action of the commission. It is apparent from the record that those who were to be affected by the proposed action were fairly and sufficiently apprised of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing and that the parties in interest and the citizens had an opportunity to be heard pursuant to General Statutes § 8-3.[2] *Passero* v. *Zoning Commission,* 155 Conn. 511, 515, 235 A.2d 660.

A legislative body is allowed wide discretion in

___

[2] "Sec. 8-3. ENFORCEMENT OF REGULATIONS; PUBLIC HEARINGS; CHANGES. . . . [The] zoning commission shall provide for the manner in which regulations . . . shall be . . . established and amended or changed. No such regulation or boundary shall become effective or be established until after a public hearing in relation thereto . . . at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in the form of a legal advertisement

the selection of classes although the equal protection clause requires that a zoning ordinance be applied in like manner to all those who are similarly situated. *Barrett* v. *Indiana,* 229 U.S. 26, 29, 30, 33 S. Ct. 692, 57 L. Ed. 1050. "The Fourteenth Amendment is not a pedagogical requirement of the impracticable. The equal protection of the laws does not mean that all occupations that are called by the same name must be treated in the same way. . . . If in its theory the distinction is justifiable . . . the fact that some cases . . . are very near to the line makes it none the worse. That is the inevitable result of drawing a line where the distinctions are distinctions of degree; and the constant business of the law is to draw such lines." *Dominion Hotel, Inc.* v. *Arizona,* 249 U.S. 265, 268, 269, 39 S. Ct. 273, 274, 63 L. Ed. 597 *(Holmes, J.).*

A state has far broader power and latitude to regulate and restrict the use, distribution or consumption of liquor than the power to regulate or restrict ordinary business because of its effect on the health and welfare of the public. *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388; *Mazza* v. *Cavicchia,* 15 N.J. 498, 505, 105 A.2d 545; 30 Am. Jur. 542, Intoxicating Liquor, § 25. Courts recognize the exceptional problems involved in successfully regulating trade in intoxicating liquors and the enlarged right and exceptional power to regulate liquor. *Carter* v. *Virginia,* 321 U.S. 131, 136, 137, 64 S. Ct. 464, 88 L. Ed. 605;

---

appearing in a newspaper . . . before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk, as the case may be, in such municipality . . . for public inspection at least ten days before such hearing, and may be published in full in such paper. . . . The provisions of this section relative to public hearings and official notice shall apply to all changes or amendments. . . ."

*Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U.S. 311, 332, 37 S. Ct. 180, 61 L. Ed. 326. In passing upon the mode of regulation it has been said: "[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." *Ferguson* v. *Skrupa,* 372 U.S. 726, 729–30, 83 S. Ct. 1028, 10 L. Ed. 2d 93; *Joseph E. Seagram & Sons, Inc.* v. *Hostetter,* 384 U.S. 35, 47, 86 S. Ct. 1254, 16 L. Ed. 2d 336, rehearing denied, 384 U.S. 967, 86 S. Ct. 1583, 16 L. Ed. 2d 679. Ordinances enacted by municipal zoning authorities which have been granted that power by the state legislature and prohibiting the sale of intoxicating liquors under certain circumstances have been upheld as valid exercises of the police power. *Miller* v. *Zoning Commission,* 135 Conn. 405, 408, 65 A.2d 577; 30 Am. Jur. 616, Intoxicating Liquor, § 140.

The term "shopping center" is recognized as a new category of business district different in substantial respects from other kinds of retail establishments. Its existence has been created by a change in the shopping habits of a great number of people owing to the shift to suburban living, the mobility of the public, the greater use of the automobile and the consequent need for more parking facilities. Current commercial development is tending to cluster in compact areas, and a newly developed shopping center is an example of this phenomenon. A shopping center planned and developed as a unit may embrace a diversity of stores to enable a shopper to fulfil his needs at one stop, thereby alleviating problems of parking and traffic. Local shopping districts or centers are of various

types and may vary widely. Smaller centers, limiting the number of store types, may be designed to take care of more or less daily shopping needs within a convenient distance from all residences in contrast to the large, more spectacular shopping center, covering many acres of land. *Neuger* v. *Zoning Board,* 145 Conn. 625, 631–33, 145 A.2d 738; *Clark* v. *Town Council,* 145 Conn. 476, 478, 144 A.2d 327; note, 76 A.L.R.2d 1172; 58 Am. Jur. (1967 Cum. Sup.), Zoning, § 109.5, "Shopping Centers"; 101 C.J.S. 855, Zoning, § 99, "Shopping Centers"; Williams, Structure of Urban Zoning, 199–201.

The question raised by the plaintiffs as to the reasonableness of the definition of a shopping center contained in the amendments to the zoning regulations as adopted by the commission presents a close and perplexing issue. The legality of the definition and its application to the general needs of the town, however, cannot be said to be so palpably arbitrary, unreasonable or in abuse of the commission's discretion as to require the court to interfere with the liberal discretion which the legislature has conferred on the local zoning authority. The appropriate definition of a shopping center to serve the requirements of the town of Stratford was within the province of the local commission to determine. Furthermore, the courts will not overrule the classification approved by the commission unless it is clearly discriminatory or unless the basis upon which it rests is distinctly unreasonable. *Neuger* v. *Zoning Board,* supra, 633.

In view of the factors involved in the promulgation of these amendments to the zoning regulations, we cannot say that the commission was unjustified in placing shopping centers in a class separate and distinct from other groupings of retail or individual

stores. *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 726, 184 A.2d 42. The differentiation did not constitute invidious discrimination. *Joseph E. Seagram & Sons, Inc.* v. *Hostetter,* supra, 50. It is not necessary to establish scientific or marked differences in things or persons or their relations in order to sustain the validity of a regulation under the requirements of the equal protection clause. *Orient Ins. Co.* v. *Daggs,* 172 U.S. 557, 562, 19 S. Ct. 281, 43 L. Ed. 552. The classification made by statute between a chain store and other types of stores, for example, has been held by the United States Supreme Court not to be arbitrary or unreasonable in opposition to the due process and equal protection clauses of the fourteenth amendment. *State Board of Tax Commissioners* v. *Jackson,* 283 U.S. 527, 541, 51 S. Ct. 540, 75 L. Ed. 1248.

The claim of the plaintiffs that the amendments bear no rational relation to the public health, safety and general welfare concerns the constitutional validity of the exercise of the police power by the commission in enacting the zoning legislation in question. If the legislation serves some phase of the public interest as enumerated above in a reasonable, impartial and considerate way, it may be held to be constitutionally valid. *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327. The matter was largely within the discretion of the commission, which is presumed to know regional conditions and the general characteristics of the area and is better qualified to pass upon such matters than the courts, which will not usurp the judgment of the local zoning agency. *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 422, 143 A.2d 639; 58 Am. Jur. 955, Zoning, § 26.

There is no error.

In this opinion House, Thim and Ryan, Js., concurred.

Alcorn, J. (dissenting). I do not agree that the notice of the action proposed by the commission was adequate. *Lunt* v. *Zoning Board of Appeals,* 150 Conn. 532, 536, 191 A.2d 553; *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552; *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201. The notice given was that the commission would hear arguments concerning two specific amendments to § 15 of the zoning regulations. Section 15 regulated the location of liquor outlets. Subsection 15.1 prohibited the approval of any premises for a package store permit, druggist permit or any permit allowing consumption on the premises if the location was within 200 feet of a church, a school for children under sixteen, or the street frontage of a residence district. Subsection 15.2 prohibited the approval of premises for any class of permit if its entrance was within 1500 feet of a similar establishment, measured along the street. The proposed amendment to § 15.3 would exempt only wholesale liquor outlets, grocery stores selling canned or bottled beer or ale, and certain hotels from this 1500-foot requirement. The proposed § 15.11 was new and purported only to define a shopping center in which one outlet for the sale of packaged liquor would be permitted. The amendments which were adopted not only made provision for the shopping center liquor outlet but also amended § 15.3 by exempting the shopping center outlet from both the 1500-foot regulation under § 15.2 and the 200-foot regulation under § 15.1.